**TWENTY–THREE THOUSAND EIGHT HUNDRED ELEVEN AND NO/100 ($23,811) DOLLARS IN U.S. CURRENCY, et al.**

v.

**Chester KOWALSKI, et al.**

**No. 92–0171LC.**

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Jan. 12, 1993.

John E. Sherman, Houston, TX, for plaintiffs.

Fred A. Book, Jr., Lake Charles, LA, for Sheriff's Dept.

James Carl Hrdlicka, Baton Rouge, LA, for Parish of Jefferson Davis.

## MEMORANDUM RULING

TRIMBLE, District Judge.

Now before the court for its consideration is Plaintiffs' Motion for Summary Judgment in the above-captioned matter. Plaintiffs seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in that as a matter of law defendant Kowalski's warrantless search and seizure of the plaintiffs and their property was without probable cause and/or a reasonable suspicion supported by articulable facts and as such offended plaintiffs' Fourth Amendment Constitutional guarantees. Kowalski responds that there are genuine issues of material fact sufficient to preclude this court from granting a motion for summary judgment in favor of the plaintiffs.

## MOTION FOR SUMMARY JUDGMENT

To prevail on this Motion for Summary Judgment the plaintiffs must establish as to any one portion of their Motion that there are: (1) no questions of material fact, and (2) that they are entitled to judgment as a matter of law. In *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir.1991), the Fifth Circuit Court of Appeals held that, "[s]ummary judgment is

appropriate where the only issue before the court is a pure question of law." All disputes of material fact must be resolved in favor of the nonmoving party, and all inferences that may be reasonably drawn from those facts must be construed in a light most favorable to him. *Id.* If plaintiffs establish that they are entitled to judgment in their favor as a matter of law, this court must grant the motion for summary judgment unless the other party comes forth with specific facts showing that there is a genuine issue for trial. See *Lechuga v. Southern Pacific Transp. Co.,* 949 F.2d 790, 798, 21 Fed.R.Serv.3d 1398 (5th Cir. 1992), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 4 Fed.R.Serv.3d 1041, 12 Media L.Rep. 2297 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lechuga, supra.*

TERRY STOP

Plaintiffs argue that Kowalski's stop of them violated their Fourth Amendment Rights. In his Memorandum in Opposition to Motion for Summary Judgment Kowalski shows that if all disputes of material fact are resolved in his favor and if all inferences that may be reasonably drawn from the facts are construed in a light most favorable to him, he reasonably stopped plaintiffs. Kowalski alleges that he, "first observed the vehicle for following too closely and appearing to have illegal window tint." Kowalski then either followed or drove alongside plaintiffs for ¼ mile before signaling plaintiffs to stop. Kowalski, in fact, cited Patterson for the illegal window tint as well as for driving without a driver's license. The plaintiffs themselves, in their Memorandum of Law in Support of Motion for Summary Judgment, point out that the Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one. *United States v. Mitchell,* 951 F.2d 1291, 1295, 293 U.S.App. D.C. 24 (1991) *cert. denied Zollicoffer v. U.S.,* —— U.S. ——, 112 S.Ct. 1976, 118 L.Ed.2d 576 (1992). In addition, it is now

well known law that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–1885, 20 L.Ed.2d 889 (1968).

Assuming the facts are as Kowalski alleges, pursuant to the law cited to the court by plaintiffs, Kowalski's stop of plaintiffs was reasonable. See *Mitchell, supra.* Indeed, that Kowalski cited Patterson for driving a vehicle with illegally tinted windows evidences the fact that Kowalski's stop for illegal window tint was proper to the extent that it was not based on a whim or hunch, but rather, upon a tangible violation of Louisiana law.

FOURTH AMENDMENT DETENTION

■ Our analysis will now focus upon the reasonableness of Kowalski's detention of the plaintiffs under the Fourth Amendment. The Fourth Amendment bars only unreasonable searches and seizures. The reasonableness inquiry is driven by the balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *New York v. Class,* 475 U.S. 106, 118, 106 S.Ct. 960, 968, 89 L.Ed.2d 81 (1986). The intrusiveness of the search, however, is not measured so much by its scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as "reasonable." *U.S. v. Pierre,* 958 F.2d 1304 (5th Cir.1992) *cert. denied Harris v. U.S.,* —— U.S. ——, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992).

■ The exception to the probable cause requirement for limited seizures of the person recognized in *Terry* and its progeny rests on the balancing of the competing interests to determine the reasonableness of the type of seizure involved within the meaning of "the Fourth Amendment's general proscription against unreasonable searches and seizures." *Terry,* 392 U.S., at 20, 88 S.Ct., at 1879. This court must balance the nature and quality

of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental intrusion alleged to justify the intrusion. When the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement's interests can support a seizure based on less than probable cause.

■ In his Memorandum in Opposition to Motion for Summary Judgment Kowalski shows that if all disputes of material fact are resolved in his favor and if all inferences that may be reasonably drawn from the facts are construed in a light most favorable to him, he reasonably detained and subsequently searched plaintiffs. Kowalski alleges that he detained plaintiffs after they gave him conflicting stories at the scene as to the nature of their travels and their recent activities and as to the ownership of the BMW. Patterson did not have a drivers license. Further, Kowalski's routine check with the Drug Enforcement Administration indicated that Patterson and certain members of his family were involved in the crack cocaine business. Patterson has been involved in drug related seizures and/or charges in Jefferson Parish, Louisiana and in Jefferson County, Texas.

■ When an officer's observations lead him reasonably to believe that a traveler's vehicle contains contraband or other evidence of criminal activity *Terry* and its progeny permit the officer to detain the vehicle briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope. See *Terry*, 392 U.S., 20, 88 S.Ct., 1879; *Unites States v. Cortez*, 449 U.S. 411, 421, 101 S.Ct. 690, 697, 66 L.Ed.2d 621 (1981); *United States v. Brigoni–Ponce*, 422 U.S. 873, 881–882, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975); and *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

Assuming these allegations are true, then Kowalski's detention of the plaintiffs until a canine unit could be summoned was appropriate.[1]

■ *Terry* instructs this court that an the officer's action is permissible if it was justified at its inception and was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. A motorist can be subjected to a broad range of undeniably intrusive police conduct based on no more than a police officer's reasonable suspicion that the occupants may be engaged in crime. Plaintiffs complaint alleges that they were stopped at approximately 7:00 am. Kowalski summoned the canine unit and it appeared at the scene at 7:36 am. The trained narcotics dog allegedly alerted on the trunk of the vehicle. Immediately thereafter, at 7:41 am, Kowalski reported the seizure.

In determining the reasonableness of an investigative detention, "common sense and ordinary human experience must govern over rigid criteria." *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). That the Fourth Amendment "does not require police officers to close their eyes to suspicious circumstances" is beyond peradventure. *United States v. Espinosa*, 782 F.2d 888, 891 (10th Cir.1986).

*Sharpe* instructs that the duration of the stop is an important factor. 470 U.S. at 685, 686, 105 S.Ct. at 1575. We bear in mind the Supreme Court's admonition prior to *Sharpe* that 90 minutes in probably too long for a *Terry* stop. See *Place*, 462 U.S. at 709, 103 S.Ct. at 2645 ("The length of the detention alone precludes the conclusion that the seizure was reasonable in the absence of probable cause"). The investigative stop in this case lasted approximately forty minutes, from about 7:00 am, when Kowalski stopped the plaintiffs, until about 7:41 am, when the narcotics dog alerted on the trunk. The court finds this time slight-

---

**1.** Kowalski points out in his brief that he did not detain the plaintiffs; rather, he only detained their BMW. The court is not impressed with this argument. The simple fact of the matter is that the plaintiffs, stopped on the side of Interstate 10 hundreds of miles from home, had no means of getting home or even to a telephone. Kowalski did indeed detain the plaintiffs as well as the BMW.

ly misleading in that Kowalski was first confronted with the task of resolving the drivers license and window tint problems before he was able to address his suspicions that a search was needed. The time of detention should only be computed from the moment Kowalski moved from the traffic violations to the matters at hand.

The court must confess some unease on encountering a *Terry* stop lasting as long as this one. *Cf. United States v. Borys,* 766 F.2d 304, 313 (7th Cir.1985) *cert. denied Borys v. United States,* 474 U.S. 1082, 106 S.Ct. 852, 88 L.Ed.2d 893 (1986) (75–minute detention was "at the outer bounds of the Constitution"); American Law Institute, Model Code of Pre–Arraignment Procedure § 110.2(1) (1975) (suggesting twenty minutes as maximum duration for *Terry* stop). On the facts of the case, however, the court cannot say the length of the stop, by itself, invalidated the detention. The duration of the stop is, in fact, the only significantly troubling circumstance in this case. In view of the other aspects to the stop demonstrating that Kowalski acted with propriety and the expedition with which Kowalski arranged for a canine unit, the doubts raised by the length of the detention are not sufficient for the court to find that the stop violated the Fourth Amendment. This case is less troubling than either *U.S. v. Hardy,* 855 F.2d 753 (11th Cir.1988) *rehearing denied U.S. v. Hardy,* 861 F.2d 1281 (11th Cir. 1988) (TABLE) and *cert. denied Hardy v. U.S.,* 489 U.S. 1019, 109 S.Ct. 1137, 103 L.Ed.2d 198 (1989) or *U.S. v. Alpert,* 816 F.2d 958 (4th Cir.1987); both of which involved fifty minute detentions.

This court finds the Tenth Circuit Court of Appeals' decision in *United States v. Morales–Zemora,* 914 F.2d 200, 203 (10th Cir.1990), persuasive. The Tenth Circuit held that a dog sniff is not a search within the meaning of the Fourth Amendment. Therefore, an individualized reasonable suspicion of drug-related criminal activity is not required when a dog sniff is employed during a lawful seizure of a vehicle. The detention of the plaintiffs until the canine unit conducted a dog sniff was valid.

There is no serious dispute here that the officer diligently sought the canine unit to complete his investigation. Balancing the nature and quality of the brief detention on plaintiffs' constitutional guarantees against the governmental interests in crime prevention and detection, as we must under *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983), this court concludes that the character and extent of plaintiffs' detention was minimally intrusive and thus outweighed by these governmental interests. After resolving the driver's license and window tint problems, Kowalski immediately summoned the canine unit. The use of the canine unit after the officer's reasonable suspicions were aroused was not a violation of the constitutional rights of either the owner or operator of the vehicle. That this is the proper rule of law is bolstered by the United States Supreme Court's ruling in *Place,* 462 U.S. at 707, 103 S.Ct. at 2644–2645, and by the United States Fifth Circuit Court of Appeals' decision in *Horton v. Goose Creek I.S.D.,* 690 F.2d 470 (5th Cir.1982) *rehearing denied Horton v. Goose Creek I.S.D.,* 693 F.2d 524 (5th Cir.1982) and *cert. denied Goose Creek Consolidated I.S.D. v. Horton,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983).

The canine sniff ordered in this case is the kind of brief, minimally intrusive investigative technique that may justify a *Terry* stop. As the Supreme Court noted in *Place,* a canine sniff does not require the opening of luggage and does not reveal intimate but noncontraband items to public view. "[T]he manner in which information is obtained through this investigative technique is much less intrusive than a typical search." *Place,* 462 U.S. at 707, 103 S.Ct. at 2644; see also *Florida v. Royer,* 460 U.S. 491, 505–506, 103 S.Ct. 1319, 1328–1329, 75 L.Ed.2d 229 (1983) (suggesting that police questioning of suspects may not be justified under circumstances where canine sniff would confirm or dispel suspicions). Nor does a canine sniff involve the time-consuming disassembly of luggage or an automobile frequently required in a thorough search for contraband. See *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976) (Even if one has a greater expecta-

tion of privacy in the contents of an automobile trunk than in luggage carried through an airport, a highly debatable point, a canine sniff of a car is "minimally intrusive" within the meaning of cases such as *Place*). Thus, one can see that under the Fourth Amendment and other applicable law Kowalski's detention of plaintiffs until a canine unit arrived was proper. We therefore hold that the investigative detention of plaintiffs did not exceed the permissible scope of a *Terry* stop.

Further, the court notes that the parties dispute whether the canine unit, in fact, alerted on the trunk. This is just such a dispute as to material fact as to preclude the court's entry of summary judgment.

## FOURTH AMENDMENT SEARCH

■ Plaintiffs allege that Kowalski's search of the trunk of their car violated their Fourth Amendment guarantee against unreasonable searches. Once again, assuming the facts are as Kowalski alleges and after drawing all reasonable inferences in Kowalski's favor as the court is required to do in evaluating a motion for summary judgment, Kowalski reasonably searched the BMW, including the trunk, despite his lack of a search warrant. Kowalski's search was reasonable because Kowalski had probable cause to conduct the search. A search is reasonable if it is based upon facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained. *United States v. Ross*, 456 U.S. 798, 808–810, 102 S.Ct. 2157, 2164–2165, 72 L.Ed.2d 572 (1982) (search of brown paper bag in trunk of a car permissible so long as justified by probable cause). More specifically, *Ross* held "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 456 U.S. at 825, 102 S.Ct. at 2173.

■ Kowalski alleges that the trained narcotics detection dog alerted on the trunk of the BMW. The dog's alert, when viewed in light of the totality of the circumstances surrounding this stop, provided Kowalski with probable cause to believe that the BMW, and, more specifically, the trunk,

contained contraband or other evidence of criminal activity. These facts provide sufficient probable cause to justify the issuance of a search warrant. This probable cause justified Kowalski's warrantless search of the vehicle. See also *California v. Acevedo*, —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (search of container placed in trunk permissible so long as probable cause exists as to container).

## FOURTH AMENDMENT SEIZURE

■ Plaintiffs next complain that Kowalski's seizure of their property was improper. In his Memorandum in Opposition to Motion for Summary Judgment Kowalski shows that if all disputes of material fact are resolved in his favor and if all inferences that may be reasonably drawn from the facts are construed in a light most favorable to him, he reasonably seized plaintiffs' property.

Louisiana Revised Statutes 40:2601, *et seq.* is the Louisiana "Seizure and Controlled Dangerous Substances Property Forfeiture Act of 1989." La.R.S. 40:961 is the Louisiana enactment of the "Uniform Controlled Dangerous Substances Law." Essentially, La.R.S. 40:2601 *et seq.* provides that acts in violation of the controlled dangerous substances law are acts giving rise to forfeiture. La.R.S. 40:2604 provides that property used or intended to be used in any manner to facilitate conduct giving rise to forfeiture and proceeds of any conduct giving rise to forfeiture is contraband and property which is subject to forfeiture.

Upon opening the BMW's trunk, Kowalski found it to contain $23,811.00. Because of the manner in which the money was packaged, the lack of either visible or stated means of either of the plaintiffs acquiring the money, the conflicting explanations about the money, the conversations between Melonson and Patterson in which Patterson told Melonson to tell the police that the money was hers, and other alleged factors, Kowalski seized the BMW and currency. Due to Kowalski's reasonable suspicions, Kowalski also seized a pager in the possession of Patterson that Kowalski believed Patterson intended to use in a manner to facilitate conduct giving rise to forfeiture under Louisiana law and a Rolex

watch that Kowalski believed Patterson obtained with the proceeds of conduct giving rise to forfeiture. Kowalski reasonably seized the property pursuant to the above-referenced statutes.

In a state forfeiture proceeding, the state need only establish reasonable grounds for its belief that the properties seized constitute proceeds from illegal drug trafficking. Plaintiffs themselves instruct the court that the seizure was proper so long as Kowalski, based upon the information available to him at the scene, had probable cause for his belief that a substantial connection existed between the property and the criminal activity defined by the statute. Plaintiffs' Reply to Defendant's Brief in Response to Court Order for Additional Briefs at page 3. That this is indeed the proper rule of law is confirmed by Circuit Judge Kravitch's erudite opinion in *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($364,960) in U.S. Currency*, 661 F.2d 319, 323 (5th Cir.1981).

It is clear that the discovery of large sums of money without credible explanation, can provide the necessary circumstantial evidence that the money was furnished or intended to be furnished in a drug transaction. *United States v. $38,600.00 in U.S. Currency*, 784 F.2d 694, 697–698 (5th Cir. 1986). See also *United States v. $288,-914.00 in United States Currency*, 722 F.Supp. 267, 269 (E.D.La.1989). Circuit Judge Smith, writing for the United States Fifth Circuit Court of Appeals, in *United States v. One 1987 Mercedes 560 SEL*, 919 F.2d 327, 331 (5th Cir.1990), set forth that the officer's determination of probable cause is derived from the totality of the circumstances, not from "a minute parsing of each item of information, that leads to a finding of probable cause." See also *Illinois v. Gates*, 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983) *rehearing denied Illinois v. Gates*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983) (even "innocent behavior," when considered in its overall context, may "provide the basis for a showing of probable cause").

Plaintiffs' Motion for Summary Judgment asserts that there is no question of material fact. In opposition to this, however, Kowalski points to several questions of fact that, if established, would mandate that this court enter a judgment in his favor. In his Supplemental Memorandum in Opposition to Motion for Summary Judgment Kowalski directs the court's attention to his response to Interrogatory Number 12 of the plaintiffs' Request for Admissions and Interrogatories to defendant Kowalski:

> *"Interrogatory No. 12.* Please state the factual basis in which you relied upon to seize the 1985 BMW owned by the passenger on September 23, 1991.
>
> The passenger advised that the BMW was a Christmas present from Patterson; that Patterson was unemployed and she felt that Patterson was in the crack cocaine business. Upon checking with the Drug Enforcement Administration of Beaumont, Texas, it was learned that Patterson and certain family members were considered to be in the crack cocaine business. It was learned that the driver had been involved in drug-related seizures and/or charges in Jefferson Parish, Louisiana, and Jefferson County, Texas. The driver and passenger detailed conflicting stories at the scene as to the nature of their travel plans and their recent activities. The trained narcotics dog alerted on the trunk of the vehicle. The manner in which the money was packaged, no visible or stated means of acquiring the money, conflicting explanations about the money, conversation between Melonson and Patterson in which Patterson told Melonson to tell the money was hers." [sic]

Once again, as this is a motion for summary judgment, this court must resolve all disputes of material fact in Kowalski's favor and must construe all inferences that may be reasonably drawn from the facts in a light most favorable to Kowalski. These facts which are presently of record, if proven, are sufficient to establish that Kowalski had a reasonable belief that the property seized was connected to narcotics.

## CONCLUSION

This has been a well contested motion. Unfortunately for the plaintiffs, however,

the burden imposed upon the party pleading a motion for summary judgment heavily favors the nonmoving party. As a result, this court is unable to grant plaintiffs' Motion for Summary Judgment as to any part. As noted above, to prevail on a motion for summary judgment the plaintiffs must establish that there are no issues as to the material facts of the case. Further, the plaintiffs must establish that as a matter of law they are entitled to a ruling in their favor. Plaintiffs have failed to meet this burden. Plaintiffs have utterly failed to prove that there exist no questions of material fact concerning the stop, the detention, the search, or the seizure. Nor have plaintiffs proven as a matter of law that the stop was invalid, that the detention was invalid, that the search was invalid, or that the seizure was invalid. For the reasons stated above, this court must deny plaintiffs Motion for Summary Judgment.