STATE of Missouri, Respondent,

v.

Terry DUNCAN, Appellant.

No. WD 47221.

Missouri Court of Appeals,
Western District.

July 12, 1994.

Lew Kollias, Office of the State Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before LOWENSTEIN, P.J., and BERREY and SPINDEN, JJ.

SPINDEN, Judge.

A jury convicted Terry Duncan of the class B felony offense of production of more than five grams of marijuana. The court sentenced him to five years in prison. He challenges his conviction on three grounds: He contends that the trial court erred by (1) not suppressing the marijuana found in the car in which he was riding because the officer acted unlawfully in seizing it; (2) overruling his challenge for cause to a venireperson; and (3) submitting the reasonable doubt instruction patterned after MAI–CR3d 302.04. We affirm the conviction.

## SUPPRESSION OF MARIJUANA

On August 5, 1991, Officer David Trickel, Deputy Sheriff of Grundy County, received a radio dispatch that a white Monte Carlo with a particular license plate number had been seen at the southwest corner of the Hickory area on Route W in Grundy County.[1] A later dispatch informed Trickel that the vehi-cle had stopped in front of a farm house and that two people had jumped the fence. The dispatch also told Trickel that when the individuals got back in their car they appeared to be carrying something and that the car was headed north on Route W. The farm house belonged to Trickel's grandmother, and he knew that marijuana grew wild on the farm. He also knew that the abandoned farm house still had old furniture in it and that the house had been the target of thieves and vandals.

Trickel drove toward the area. He saw the car going north on Route W and saw three people in it. The car's license plate number matched the number given by the dispatch. Trickel followed the car. While following the car into Trenton, Trickel turned on his car's red emergency lights either shortly before or as the car pulled into the driveway of Duncan's residence at 417 Crowder Road. Trickel parked his car in the driveway.

The driver and the front seat passenger ran from the car. Duncan remained in the back seat. When Trickel walked up to the car and asked Duncan what he was doing, he could see two brown plastic trash bags in the back seat. Protruding from the bags were stalks, stems and green leafy material which appeared to Trickel to be marijuana. Trickel placed Duncan under arrest and conducted a field test on the material. The test indicated that it was marijuana.

Duncan filed a motion to suppress the marijuana. He alleged that he was stopped and searched without probable cause. At the suppression hearing, Trickel acknowledged that the dispatcher did not tell him who had provided the information and that he had no reason to believe it was a reliable tip. He also acknowledged that the only reason he followed the car was his knowledge of wild marijuana growing on his grandmother's farm and the dispatch's report that the car's occupants had thrown something into the car. The trial court denied the motion to suppress.

---

1. Unbeknownst to Trickel, his uncle had called the sheriff's office and informed the dispatcher about the car at Trickel's grandmother's farm.

■ When we review a ruling on a motion to suppress, we will affirm if the ruling is supported by substantial evidence. *State v. Franklin*, 841 S.W.2d 639, 641 (Mo. banc 1992). We review the facts in the light most favorable to the ruling and disregard any contrary inferences. *State v. Hoopingarner*, 845 S.W.2d 89, 92 (Mo.App.1993). Our review is not limited to the evidence presented at the hearing on the motion; we may review the entire record, including additional evidence presented at trial. *State v. Collins*, 816 S.W.2d 257, 258 (Mo.App.1991).

■ The Fourth Amendment of the United States Constitution[2] is not offended when a police officer briefly stops a person if the officer has a reasonable suspicion, based upon specific and articulable facts, that the person was or is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). Nor is the Fourth Amendment offended when a police officer stops a moving vehicle to investigate if the officer has a reasonable suspicion, based upon specific and articulable facts, that the passengers of the vehicle are involved in criminal activity. *United States v. Brignoni-Ponce*, 422 U.S. 873, 882, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975). Further, a passenger in a vehicle is entitled to challenge the validity of an initial stop. See *United States v. Portwood*, 857 F.2d 1221, 1222 (8th Cir.1988), *cert. denied*, 490 U.S. 1069, 109 S.Ct. 2073, 104 L.Ed.2d 638 (1989).

■ The state contends that an investigative stop did not occur. We need not decide because even if this case involved an investigative stop, Trickel had a reasonable suspicion, based upon specific and articulable facts, that the vehicle's passengers were involved in criminal activity. Reasonable suspicion is dependent upon the totality of circumstances. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). Trickel had a reasonable suspicion, based upon his own knowledge, that the car's passengers were involved in criminal activity. The radio dispatches informed Trickel that a vehicle had been seen on his grandmother's farm and provided a license plate number. The source of the dispatch was revealed at trial to be Trickel's uncle. Trickel knew that marijuana grew wild on his grandmother's farm and that the abandoned farm house had been the target of thieves and vandals. It was reasonable for him to conclude in light of his knowledge that the vehicle was not supposed to be on the property and reasonable for him to investigate. Pursuant to *Terry*, he was entitled to make a brief stop of the vehicle to investigate his suspicions.

Duncan relies on *State v. Franklin*, 841 S.W.2d at 639, in support of his contention that Trickel lacked reasonable suspicion to initiate the stop. In *Franklin*, the police officer received a radio dispatch stating "party armed, occupying a black 1984 Pontiac Fiero in the area of 4200 East 60th Terrace." After stopping a car matching the description in the indicated area, the officer discovered no weapons, but ultimately uncovered contraband. Relying on *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) the court noted that no evidence was produced establishing that the dispatch was based on reasonable suspicion. The court concluded:

> The record contains no evidence of a dispatch issued on the basis of reasonable suspicion, and the detaining officer did not personally observe, independent of the dispatch, any behavior that would justify the stop. The dispatcher was not called to testify at the suppression hearing. The record is silent as to the source of the information that lead to the police dispatch. Without that information, the court cannot determine whether the dispatch was based upon reasonable suspicion.

*Franklin*, 841 S.W.2d at 644 (footnotes omitted).

Unlike *Franklin*, Trickel's actions were not based solely upon the dispatch, but were also based upon his own knowledge. Further, the trial court heard testimony that the source of at least one of the dispatches was Trickel's uncle. Thus, the trial court properly denied Duncan's motion to suppress the

---

2. The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated[.]"

marijuana discovered in the back seat of the vehicle in which Duncan was riding.

## STRIKING OF VENIREPERSON

■ In his second point, Duncan contends that the trial court erred in refusing to strike for cause Venireperson Janice Doolin. During Duncan's voir dire of the venire panel, his attorney asked the panel if any of them had strong feelings for "approval on the war on drugs" or "above average feelings against drugs." Doolin responded that she had been involved with public school drug programs for five years and had done much speaking and teaching on the subject. This exchange then occurred:

MR. ESTES: Okay. So, I suppose your feelings are very, very strong, aren't they?

VENIREMAN DOOLIN: Yes, they are.

MR. ESTES: Okay. Because this is a drug case, do you think maybe those feelings will make it a little bit difficult for you to be fair?

VENIREMAN DOOLIN: It might. I have very strong feelings. I'm also a registered nurse and work at the hospital and—

MR. ESTES: Okay. So you probably—

VENIREMAN DOOLIN: And I see things in the emergency room that I probably—

MR. ESTES: Yeah.

VENIREMAN DOOLIN: So, I probably have very strong feelings against them.

MR. ESTES: Okay. So, when the Court instructs you in the law, you might have difficulty setting aside those feelings?

VENIREMAN DOOLIN: Not the law. No, I can go in accordance with the law.

Duncan made a motion to challenge Doolin for cause because of her strong feelings and her potential difficulty in being a fair and impartial juror. The trial court denied the challenge, and Duncan expended a peremptory challenge to remove Doolin from the panel.

Duncan contends that the trial court's denial of his challenge for cause denied him the right to a panel of qualified jurors from which to exercise his peremptory challenges. We disagree.

■ Pursuant to § 494.480.4, RSMo Cum. Supp.1993, a trial court's overruling a challenge for cause is not reversible error when a peremptory challenge is used to remove the juror from the panel. Section 494.480.4 provides in part:

> The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for the granting of a motion for new trial or the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant.

This statute became effective on August 28, 1993, and Duncan argues that it should be applied prospectively to any trials occurring after that date.

In *State v. Wings,* 867 S.W.2d 607, 609 (Mo.App.1993), this court's Eastern District held that § 494.480 was a procedural statute and did "not offend the prongs of the ex post facto test[.]" The court concluded that the statute could be applied retroactively to any cases on appeal where this issue was raised. *Id.*[3] Thus, § 494.480 applies to Duncan's case and bars his claim of error.

## REASONABLE DOUBT INSTRUCTION

■ In his third point, Duncan challenges the trial court's use of MAI–CR3d 302.04, the instruction defining "reasonable doubt." He asserts that it unconstitutionally lowered the state's burden of proof by equating "reasonable doubt" with proof that leaves the jury "firmly convinced" of guilt.

The Missouri Supreme Court has repeatedly upheld the validity of MAI–CR3d 302.04 against identical constitutional challenges. *State v. Griffin,* 848 S.W.2d 464, 469

---

3. Duncan points out to us that the Missouri Supreme Court recently, in *State v. Harris,* 870 S.W.2d 798 (1994), evaluated a claim that a peremptory challenge was erroneously expended based on the trial court's refusal to strike a juror for cause and denied the claim on the merits without reference to § 494.480. The only conclusion we draw from Harris is that § 494.480 must not have been brought to the court's attention.

(Mo. banc 1993); *State v. Blankenship*, 830 S.W.2d 1, 13 (Mo. banc 1992). Duncan's point is denied.

The judgment of the trial court is affirmed.

All concur.