STATE of Missouri, Respondent,

v.

Elvin Anthony LOGAN, Appellant.

No. WD 50714.

Missouri Court of Appeals,
Western District.

Dec. 12, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 30, 1996.

Daniel Viets, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Kocot, Asst. Attorney General, Jefferson City, for respondent.

Before SPINDEN, P.J., TURNAGE, Senior Judge, and SMART, J.

SMART, Judge.

Appellant, Elvin Anthony Logan, appeals from his conviction for possession of a controlled substance with intent to distribute, § 195.211, RSMo 1986.[1] He presents one point on appeal claiming that the trial court erred in overruling his objections to the admission in evidence of marijuana found in a car he was driving in that such evidence and subsequent statements made by him were tainted as fruits of an illegal detention and an illegal search. The judgment of the trial court is affirmed.

On August 15, 1993, at approximately 10:45 p.m., Corporal Marty Chitwood of the Missouri State Highway Patrol noticed a car weaving over the center line of I–70 in Boone County. Corporal Chitwood pulled the car over and made contact with the driver, who was informed that he had been pulled over for weaving. The driver of the car told him that his name was Shawn Turner and furnished Corporal Chitwood with a temporary Arizona permit. The driver told Corporal Chitwood that the other occupant of the car was his wife, Katherine. The driver also produced the title to the car. The officer checked the title to the car and found it was issued to a person named Melanie Rogers.

The driver explained that Rogers was an acquaintance. The driver of the car told Corporal Chitwood that he and his wife were on their honeymoon and that they were on their way to New York, where his wife had family. The officer noted that the driver was very nervous, wringing his hands and moving around. Corporal Chitwood spoke to the driver's wife out of the hearing of the driver. She contradicted his story, telling the officer that she did not have family in New York. Also, in contrast to the driver's description of Melanie Rogers as being 48 to 50 years old, she described Rogers as being in her thirties.

Corporal Chitwood asked the driver for his consent to search the car. The driver was hesitant, so Chitwood declined to search the car. Chitwood, however, radioed a request for a canine unit, detaining the couple until the canine unit arrived. Thirty-two minutes after being summoned, a dog trained to sniff for drugs, Argo, was brought to the scene by Corporal Dave Mease. Corporal Mease walked Argo around the car. Argo suddenly jumped into the car through an open rear window. Argo "alerted" on the trunk of the car as trained to indicate the presence of drugs. The officers obtained the keys to the trunk and opened it. They found three large duffle bags of marijuana weighing 120 pounds and a five pound brick of marijuana. Corporal Chitwood arrested the driver and read him his Miranda[2] rights. The driver admitted the marijuana in the trunk was his and did not belong to his wife. He admitted that the car was in a fictitious name and that he was being paid to transport the marijuana. The driver of the car, whose real name was Elvin Anthony Logan, was also using a fictitious name of Shawn Turner.

Logan was charged with possession of a controlled substance with intent to distribute under § 195.211. Logan filed a motion to suppress the evidence from the search and the fruit thereof. The motion was denied. During the bench trial, Logan again admitted that he was transporting marijuana to Mas-

---

1. All sectional references are to Missouri Revised Statutes 1986, unless otherwise indicated.

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

sachusetts.[3] The trial court found Logan guilty and sentenced him to seven years imprisonment.

Logan's sole contention on appeal is that the trial court erred in admitting the evidence obtained by the officers' search of the car and in admitting his on-the-scene admissions because the state obtained the statements and evidence in violation of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and in violation of Article 1, Sections 10, 15 and 19 of the Missouri Constitution. He asserts that the physical evidence and the statements made were the fruit of an illegal detention and an illegal search of the car.

### Standard of Review

 In reviewing the trial court's denial of a motion to suppress, we do not substitute our discretion for that of the trial court. *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990). We will affirm the ruling of the trial court if that ruling is supported by substantial evidence. *State v. Duncan*, 879 S.W.2d 749, 751 (Mo.App.1994). The ruling on a motion to suppress will be reversed only if found to be clearly erroneous. *State v. Stevens*, 845 S.W.2d 124, 128 (Mo.App.1993). All facts are viewed in the light most favorable to the ruling; contrary inferences are disregarded. *Duncan*, 879 S.W.2d at 751. The weight given to the evidence and the credibility of the witnesses are matters for the determination of the trial court. *State v. Bunts*, 867 S.W.2d 277 (Mo.App.1993).

### Detention of Appellant

 Logan claims that his detention by Corporal Chitwood extended beyond what was required for a normal traffic stop. Logan correctly asserts that the stopping of an automobile and detention of its occupants constitute a seizure with Fourth Amendment implications even if the stop is for a limited purpose and the detention brief. *State v. Kovach*, 839 S.W.2d 303, 311 (Mo.App.1992). However, as this court pointed out in *Duncan*, 879 S.W.2d at 751, "[t]he Fourth Amendment of the United States Constitution is not offended when a police officer

briefly stops a person if the officer has a reasonable suspicion, based upon specific and articulable facts, that the person was or is involved in criminal activity." Initially, we note that an officer's observation of weaving in traffic is a sufficient basis for an investigative stop. *State v. Hernandez*, 880 S.W.2d 336, 338 (Mo.App.1994). Logan's trial testimony acknowledges that he was weaving while trying to read a map, and no contention has been made that the reason given for the stop was a mere pretext.

 Logan contends that his detention went beyond the requirements of a normal traffic stop and was, therefore, an unreasonable seizure. *State v. Riddle*, 843 S.W.2d 385, 387 (Mo.App.1992). The court in *Riddle* addressed the question of what constitutes a normal traffic stop, stating:

> During a routine traffic stop, an officer may 'request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.'

*Id.* (quoting *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988)). Should the stop extend beyond the time that appears reasonably necessary to achieve its original objective, it loses its lawful character unless there ensues reasonable suspicion of another crime. *Riddle*, 843 S.W.2d at 387. "Stated another way, the lawful character of a detention, and therefore seizure, may be extended if a new factual predicate for reasonable suspicion is found during the period of lawful seizure." *Bunts*, 867 S.W.2d at 280.

In *State v. Joyce*, 885 S.W.2d 751 (Mo.App. 1994), the court considered a question similar to that posed in the instant case. In *Joyce*, a trooper pulled over a car containing the defendant and the driver of the car, Cartwright. Cartwright appeared to be very nervous. *Id.* at 752. After the trooper issued a verbal warning, he asked who owned the vehicle. He was told that the vehicle was

---

**3.** The state does not argue that Logan's in-court admission of guilt of the crime with which he was charged constitutes a waiver of objection to the admission of the evidence, and we deem it unnecessary to address the issue of waiver.

rented in Arizona. The two occupants of the vehicle told contradictory stories as to where they were going. *Id.* at 753. After further interaction, the trooper asked for permission to search the vehicle. Permission was refused. The trooper summoned a canine unit and ten minutes later the canine unit arrived. The search dog alerted and 59,939 grams of marijuana were found in the trunk. The court held that the trooper was justified in asking the two occupants of the car for permission to search the automobile. The court then addressed the issue of whether the period for which the defendant was detained while awaiting the canine unit amounted to an unlawful seizure. The court surveyed a number of cases with similar facts. The court noted that the cases recognize the propriety of detaining someone following an investigatory stop, where the detention is based on "articulable and reasonable suspicion" of illegal activity even though there is not probable cause. *Id.* at 755. In *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), it was held that a ninety minute seizure of the defendant's luggage while awaiting a canine unit was unreasonable, where the officers, according to the court, could have proceeded much more expeditiously with a little advance planning. In *Twenty–Three Thousand Eight Hundred Eleven and 0/100 ($23,811) Dollars in U.S. Currency v. Kowalski*, 810 F.Supp. 738 (W.D.La.1993), a vehicle was stopped for having illegally tinted windows. The questioning of the occupants created reasonable suspicion, and a canine unit was requested. The dog arrived 36 minutes after the initial stop. The court found the officer acted with reasonable dispatch, and that the detention was not unreasonable.

In the instant case there was no evidence that either Trooper Chitwood or the canine unit failed to proceed with reasonable dispatch. Corporal Chitwood had a reasonable suspicion based upon specific and articulable facts that Logan was involved in criminal activity. *Duncan*, 879 S.W.2d at 751. Corporal Chitwood testified that: (1) Logan was "very nervous" and kept wringing his hands and moving around; (2) Logan and his passenger told inconsistent stories regarding the identity of Melanie Rogers, the name on the title of the car; (3) It is unusual for someone borrowing another's car to have the title with him; (4) Arizona is known in law enforcement circles as a source state for drugs; (5) Logan told Corporal Chitwood that he was on his honeymoon and that his wife had family in New York but Logan's wife told the officer that she did not have family in New York.

Corporal Chitwood's inquiries fall within the established framework of acceptable procedure. Chitwood was allowed to ask for registration information and to ascertain whether Logan was entitled to drive the car. It was in the course of these inquiries that reasonable suspicion arose. Furthermore, Logan's continued detention during the time that it took to transport the canine unit to the scene was not shown to be unreasonable under the circumstances. It took thirty-two minutes for the canine team to arrive after being summoned by Corporal Chitwood. Nor is there any indication of coercion or overbearing conduct on the part of Corporal Chitwood. *See Joyce*, 885 S.W.2d at 756. While awaiting the arrival of the dog, Corporal Chitwood waited in his patrol car and Logan waited in the car he had been driving. We conclude that, based on the record before us, the trial judge could reasonably conclude that the detention of the defendants and the vehicle to await the canine unit was not an unreasonable seizure.

*The Canine Sniff of Appellant's Car*

Logan contends that even if the detention was not an illegal seizure, nevertheless there was an unlawful warrantless search because of the actions of Argo in entering the car. In *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) law enforcement officials detained luggage in order to expose it to trained narcotic detection dogs on the reasonable suspicion that the contents of the luggage include narcotics. The dog-sniffing of the luggage revealed illegal narcotics. In holding that the Fourth Amendment does not prohibit such an occurrence, the Court held that a canine sniff was not a search within the meaning of the Fourth Amendment. *Place*, 462 U.S. at 707, 103 S.Ct. at 2644. The court stated:

A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

In these respects, the canine sniff is *sui generis*. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

*Id.*

 Logan complains that, unlike the search under scrutiny in *Place*, the search in the instant case did not take place in a public area. Instead, Argo entered the interior of Logan's car. The window had apparently been left open by the defendant and his wife. There is no evidence that Argo was prompted by his handlers to enter the car. In such a case, is the entrance of the dog into the car equivalent for fourth amendment purposes to an entrance into the car by a police officer?

This question was considered in *United States v. Stone*, 866 F.2d 359 (10th Cir.1989). In *Stone*, a police dog brought in to sniff the exterior of an car jumped into the open hatchback of the vehicle. It was only after the dog was in the car that it "keyed" on illegal substances. *Id.* at 361. The court held:

> We agree with the district judge that the dog's instinctive actions did not violate the Fourth Amendment. There is no evidence, nor does *Stone* contend, that the police asked Stone to open the hatchback so the dog could jump in. Nor is there any evidence the police handler encouraged the dog to jump in the car. . . . In these circumstances, we think the police remained within the range of activities they may permissibly engage in when they have reasonable suspicion to believe an automobile contains narcotics.

*Id.* at 364. We follow the court in *Stone* and hold that in the instant case Argo's action in jumping inside the window of the car was not a violation of the Fourth Amendment. After Argo's alert, the officers were justified in unlocking the trunk and searching its contents. *See Joyce*, 885 S.W.2d at 757. Thus, the trial court did not err in admitting the evidence obtained as a result of Argo's investigative sniffing.

The judgment of the trial court is affirmed.

All concur.