**STATE of Missouri, Respondent,**

v.

**Shawn K. HOUGARDY, Appellant.**

**No. WD 74913.**

Missouri Court of Appeals,
Western District.

April 2, 2013.

Gregory L. Barnes, for Respondent.

William J. Swift, for Appellant.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

JOSEPH M. ELLIS, Judge.

Shawn Hougardy appeals from his convictions of one count of attempted manufacture of methamphetamine, § 195.211, one count of resisting a lawful stop, § 575.150, and one count of tampering with physical evidence, § 575.100. Appellant also challenges the trial court's finding that he was a persistent offender. For the following reasons, the judgment is affirmed.

On April 1, 2011, Appellant was present in a house in Lexington, Missouri when

Jerry Smith, who Appellant had grown up with, called one of the occupants seeking to acquire anhydrous ammonia. Smith was told none was available. After hearing of that phone call, Appellant called Smith back and asked what he was doing. Smith told Appellant that he and his girlfriend, Autumn Ratliff, who was on speaker phone with them, were going to make methamphetamine. Appellant said he wanted to be involved, that he could get the anhydrous ammonia, and that he was willing to drive them to get the necessary supplies. Smith and Ratliff agreed.

Appellant drove from Lexington to Kansas City and picked up Smith and Ratliff. Smith had a blue bag of pseudoephedrine with him. Appellant then drove to multiple stores where the three purchased equipment and supplies. Appellant provided the money for all of the purchases because Smith and Ratliff had no money.

At a Wal–Mart in Blue Springs, Appellant purchased a blue utility trash can while Ratliff purchased a large wooden spoon at another register. Having failed to find an open store that carried "liquid fire," the three purchased drain cleaner, which they hoped would work as a suitable substitute, at a Wal–Mart in Oak Grove. They also purchased paper plates, coffee filters, and salt at that store.

Appellant next drove to a Pilot truck stop in Higginsville. They walked around separately in the store. Ratliff grabbed a pack of six lithium batteries and met Appellant and Smith near the bathrooms. She then went inside the bathroom, removed the batteries from their packaging, and placed them in her purse. The three then left the truck stop. The group's plan was for Appellant to then drop Ratliff off in Concordia and pick up Tony Davies to help Appellant and Smith get anhydrous ammonia in Houstonia, where Appellant's sister owned property.

Shortly before midnight, as he left the truck stop and turned onto Interstate 70, Appellant failed to signal his turn, and in the course of the turn, the passenger door of the truck briefly flung all the way open. Two Higginsville police officers in a marked police car witnessed those traffic violations. The officers activated their lights and siren and attempted to stop Appellant. In response, Appellant attempted to flee from the police at speeds reaching over 100 miles per hour.

The three occupants of the vehicle began yelling at each other to throw the equipment and supplies out the window. At about the 51.2 mile marker, Smith began throwing things out the passenger window at the police car. Shortly thereafter, Smith threw a trash bag containing beer bottles from the vehicle, which hit the police car and punctured the rear passenger tire.

Appellant made a sharp left turn onto Highway T, and Smith continued to throw items from the truck, including two white bags. With the flat tire slowing them down, the police officers lost sight of the truck as it went around an S curve. Appellant stopped the truck on an overpass, and the three fled on foot.

The truck was towed to an impound lot and searched. Inside the truck, officers found an 18–inch spoon, six lithium batteries, a blue utility trash container, a black bag containing a prescription bottle with Appellant's name on it and unused syringes, a Wal–Mart receipt, and a cell phone. Retracing the chase route, officers recovered a white bag with salt, coffee filters, a white bag containing blister packs of four or five different types of pseudoephedrine pills, a trash bag containing broken beer bottles, drain cleaner, a distilled water jug with the top cut off, additional blister packs of pills, a bottle of sulfuric acid, and

a plastic milk container containing a liquid solution.

Around 7 a.m. the following morning, the police picked up Appellant walking down the same road the truck had been abandoned on. He appeared dirty, scratched-up, cold, and worn-out. Appellant was arrested, and two Wal–Mart receipts from the previous evening were found in his pockets.

After receiving *Miranda* warnings and agreeing to talk, Appellant admitted that he owned the truck and had been the one driving the truck the night before during the police chase. He identified Smith and Ratliff as the other two occupants of the truck. He admitted that he was with them when they were purchasing items at the various Wal–Mart stores and that he knew the items they were buying were going to be used to make methamphetamine. He stated that he was going to get some methamphetamine for helping Smith and Ratliff. He also admitted that he had given Smith and Ratliff money to make their purchases. Appellant said that, at the time the officers started chasing them, they had been on their way to pick up Davies and then acquire some anhydrous ammonia.

Appellant was subsequently charged by indictment with one count of attempted manufacture of methamphetamine, one count of resisting a lawful stop, and one count of tampering with physical evidence. At the end of the first count, a paragraph was included asserting that Appellant was a prior and persistent drug offender punishable under Sections 195.275 and 195.291.2.

Prior to trial, the trial court found that one of the prior convictions relied upon by the State was not a drug offense. The court then found Appellant to be a prior drug offender and a prior and persistent felony offender.

Appellant was tried by jury. Ratliff and various police officers involved in the case testified at trial. Appellant was ultimately found guilty as charged. The court sentenced Appellant to a term of twenty years imprisonment on the attempted manufacturing of methamphetamine count, seven years for resisting a lawful stop, and seven years for tampering with physical evidence. The sentencing range on the latter two convictions was enhanced due to the trial court's finding of persistent felony offender status. The two seven-year sentences were to run concurrently with each other and consecutively to the twenty-year sentence. Appellant brings three points on appeal.

In his first point, Appellant claims that the trial court erred in denying his motion for judgment of acquittal on the attempted manufacturing count because the evidence was insufficient to prove beyond a reasonable doubt that he had possessed the items that had been in his truck. He notes that his personal possession of the items was the only substantial step alleged in the jury instruction to support that conviction.

"We review the denial of a motion for acquittal to determine if the State adduced sufficient evidence to make a submissible case." *State v. Watson*, 290 S.W.3d 103, 105 (Mo.App. S.D.2009) (internal quotation omitted). "Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Woods*, 284 S.W.3d 630, 638–39 (Mo.App. W.D.2009) (internal quotation omitted). "In applying this standard, the Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences

to the contrary." *Id.* at 639 (internal quotation omitted). "[T]he relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation omitted).

Pursuant to Section 195.211.1, "it is unlawful for any person to ... attempt to distribute, deliver, manufacture, or produce a controlled substance" including methamphetamine. Section 564.011.1 provides that

> [a] person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

Furthermore, "[a] person is criminally responsible for the conduct of another when ... [e]ither before or during the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." *§ 562.041.1(2).*

In this case, the verdict director was somewhat disjointed and, while including language expressing the general concept of accomplice liability, failed to allege actions on the part of Smith and Ratliff for which Appellant could be held liable as an accomplice. The jury was instructed:

> A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with the other persons with the common purpose of committing the offense or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

> First, that on or about April 1, 2011, ... the defendant possessed items used in the production of methamphetamine, and

> Second, that such conduct was a substantial step toward manufacturing or producing methamphetamine, a controlled substance, and

> Third, that the defendant engaged in such conduct for the purpose of manufacturing or producing a controlled substance,

then you are instructed that the offense of attempt to manufacture or produce a controlled substance has occurred, and if you further find a[sic] believe from the evidence beyond a reasonable doubt:

> Fourth, that with the purpose of promoting or furthering the commission of that attempt to manufacture or produce a controlled substance, the defendant acted together with, aided or encouraged other persons in committing the offense,

then you will find the defendant guilty under Count 1 of attempt to manufacture or produce a controlled substance.

Appellant claims that the evidence presented at trial was insufficient to establish that he personally possessed the items used in the manufacture of methamphetamine that were found inside or were thrown from his truck. Appellant contends that the evidence is insufficient to establish that he, rather than Smith and/or Ratliff, possessed those items.

While the verdict director certainly could have been more artfully drafted and does, indeed, impose a significantly more difficult burden of proof upon the State than necessary, effectively abandoning accomplice liability by not referencing the

actions of Smith and/or Ratliff in the instruction and relying upon Appellant's possession of the items as the sole substantial step supporting the allegation of attempted manufacture of methamphetamine,[1] the evidence does, nonetheless, sufficiently support Appellant's conviction.

"The criminal code of Missouri defines 'possess' as 'having actual or constructive possession of an object with knowledge of its presence.'" *State v. Morgan*, 366 S.W.3d 565, 575 (Mo.App. E.D. 2012) (quoting § 556.061(22)). As to possession, the jury was instructed:

> [P]ossession means either actual or constructive possession of a substance. A person has actual possession if the person has the substance on his or her person or within easy reach or convenient control. A person who, although not in actual possession, has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it.

"Possession may be sole or joint." *State v. Wurtzberger*, 265 S.W.3d 329, 336 (Mo. App. E.D.2008) (citing *§ 195.110.32* ). "If one person alone has possession of a substance, possession is sole. If two or more persons share possession of a substance, possession is joint." *Watson*, 290 S.W.3d at 106 (internal quotation omitted).

"Proof of a defendant's knowledge of the presence and character of [an item] is normally supplied by circumstantial evidence of the acts and conduct of the accused from which it can be fairly inferred he or she knew of the existence of the contraband." *Woods*, 284 S.W.3d at 639 (internal quotation omitted). Indeed, all of the cases upon which Appellant attempts to rely involve the sufficiency of circumstantial evidence to support an inference of the defendant's knowledge of and control over the relevant items. In the case at bar, however, direct evidence of Appellant's knowledge of and control over the items was admitted into evidence, and no inference was required in order to establish either element of possession.

Sergeant Joshua Thompson testified that Appellant admitted to him that he was the owner of the truck and had been driving the truck during the police chase on the evening in question. Sergeant Thompson also testified that Appellant admitted being present when Smith and Ratliff were purchasing items in the various stores and that he was aware the items were to be used to make methamphetamine. Detective Donald Hammond testified that Appellant admitted that he was driving Smith and Ratliff around and helping them because he was going to get some methamphetamine in return and that he had given Smith and Ratliff money to make their purchases. Detective Hammond further testified that Appellant told him that the three of them were in the process of going to pick up Davies and get anhydrous ammonia when the police chase occurred.

The State submitted into evidence the two Wal–Mart receipts from the previous evening that Appellant had in his pockets at the time of the arrest. Those receipts were for some of the seized items known to be used in the manufacture of methamphetamine. The State also submitted into evidence security videos from the various stores showing, at various times, Appellant purchasing items and associating with Smith and Ratliff.

---

1. *See State v. McLarty*, 327 S.W.3d 557, 568 (Mo.App. S.D.2010); *State v. Farris*, 125 S.W.3d 382, 392 (Mo.App. W.D.2004).

Ratliff testified at trial that, on the evening of April 1, 2011, Appellant had told her and Smith over the telephone that he could get the anhydrous ammonia they were looking for in order to make a batch of methamphetamine from his sister's property in Houstonia. She said that Appellant told them that he wanted to be involved in the cook and that he would pick them up. Ratliff stated that, after Appellant picked them up in Kansas City, the three of them then drove to various stores looking for equipment and materials needed to cook methamphetamine. Ratliff said that Appellant was aware that Smith had a bag full of pseudoephedrine with him. Ratliff testified that Appellant happily provided them with the money to purchase the items for the cook because he was going to be getting some of the methamphetamine they were going to make. Ratliff stated that they separately purchased various items at each of the stores and that Appellant made some of the purchases. Ratliff said that, when the police tried to pull them over, the three of them agreed not to stop and discussed whether to throw the materials out of the truck.

Further supporting the direct evidence of possession is the circumstantial evidence of Appellant's immediate, high-speed flight from the police (evidencing a consciousness of guilt);[2] Appellant's proximity to the items in the truck; and the fact that unused syringes were found in the truck in a bag containing a bottle of pills prescribed to him.[3]

In short, the evidence more than sufficiently established joint possession of the seized items by all three occupants of the truck, demonstrating that they all had knowledge of and control over the items. Thus, a finding by the jury that Appellant was in constructive possession of the items is supported by the evidence. Point denied.

■ In his second point, Appellant contends that the evidence was insufficient to support his conviction for tampering with physical evidence. "A person unlawfully tampers if he or she '[a]lters, destroys, suppresses or conceals any record, document or thing with purpose to impair its verity, legibility or availability in any official proceeding or investigation.'" *State v. Storey*, 901 S.W.2d 886, 895–96 (Mo. banc 1995) (quoting *Section 575.100.1* ). Appellant claims that, because there was no evidence that an official proceeding or investigation into the manufacturing of methamphetamine had commenced at the time items were being thrown from his truck, he cannot be deemed guilty of this crime. This same argument was rejected by the Missouri Supreme Court in *Storey*. *Id.* "[T]he statute contains no requirement that an investigation begin before one can impair it." *Id.* at 896. Point denied.

■ In his final point, Appellant claims that the trial court erred in finding him to be a prior and persistent felony offender and, therefore, enhancing his convictions for resisting a lawful stop and tampering with physical evidence from Class D to Class C felonies because he was not charged in the indictment as a prior and persistent offender. He further relies on the lack of any reference to sentencing enhancement in those two counts.

As noted *supra*, the final paragraph of Count I in the indictment filed against

2. *See State v. Morgan*, 366 S.W.3d 565, 577 (Mo.App. E.D.2012).

3. *See State v. Mickle*, 164 S.W.3d 33, 45 (Mo. App. W.D.2005) (noting that "[t]he appellant's possession of ... syringes, which can be used to inject illicit drugs in liquid form, such as methamphetamine, is evidence that would tend to connect the appellant to the meth-related items found in ... his vehicle").

Appellant, related to attempted manufacture of a controlled substance, charged that Appellant was a prior and persistent drug offender under §§ 195.275 and 195.291. The State specifically averred that Appellant had pleaded guilty to felony distribution, delivery, or manufacture of a controlled substance in the Circuit Court of Lafayette County on September 16, 2002, and that he had pleaded guilty to felony theft of anhydrous ammonia in the Circuit Court of Pettis County on February 3, 2003. Prior to trial, the State submitted evidence to the trial court establishing the convictions asserted in the petition. After finding that the prior theft conviction was not a drug offense, the trial court found Appellant to be a prior drug offender. In addition, the trial court found that Appellant was a prior and persistent offender under § 558.016 and subsequently enhanced Appellant's sentences on the resisting a lawful stop and tampering with physical evidence counts based upon that finding of persistent felony offender status.

Section 558.016 defines a "prior offender" as "one who has pleaded guilty to or has been found guilty of one felony" and a "persistent offender" as "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." The procedure for finding a defendant to be a prior or persistent offender under § 558.016 is set forth in § 558.021.1,[4] which provides:

> The court shall find the defendant to be a prior offender, persistent offender, dangerous offender, persistent sexual offender or predatory sexual offender if:
> (1) The indictment or information, original or amended, or the information in lieu of an indictment pleads all essential facts warranting a finding that the defendant is a prior offender, persistent offender, dangerous offender, persistent sexual offender or predatory sexual offender; and
> (2) Evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a prior offender, persistent offender, dangerous offender, persistent sexual offender or predatory sexual offender; and
> (3) The court makes findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a prior offender, persistent offender, dangerous offender, persistent sexual offender or predatory sexual offender.

In the case at bar, all of these elements were satisfied. The information pleaded the essential facts warranting a finding that Appellant was a persistent offender, specifically identifying two prior pleas of guilty to felonies committed at different times by Appellant. Evidence was introduced by the State establishing those prior convictions, and the trial court found beyond a reasonable doubt that Appellant had been convicted of those offenses. The State's inclusion of the pleadings at the end of Count I rather than standing alone at the beginning or end of the indictment and its failure to specifically reference § 558.016 in the indictment are of no import. *See State v. Carson*, 898 S.W.2d 555, 558 (Mo.App. W.D.1995) ("There is no express requirement that the prior offender allegations contained in an information with multiple counts be repeated in each count."). The necessary pleadings and evidence establishing Appellant's prior felony convictions were before the Court. Once

---

4. Section 195.275.2 provides that, for purposes of "prior drug offender" and "persistent drug offender" status under that section, "[p]rior pleas of guilty and prior findings of guilt shall be pleaded and proven in the same manner as required by section 558.021, RSMo."

the trial court found the prior convictions proven beyond a reasonable doubt, § 558.021.1 dictated that the trial court find Appellant to be a persistent offender. Point denied.

The judgment is affirmed.

All concur.

