

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | WD78203 |
| Respondent, | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| MARKUS MICHAEL A. | ) | May 10, 2016 |
| PATTERSON, | ) | |
| | ) | |
| Appellant. | ) | |

### Appeal from the Circuit Court of Saline County, Missouri
### Honorable Dennis Allen Rolf, Judge

### Before Division Two:
### Victor C. Howard, P.J., Thomas H. Newton, and Karen King Mitchell, JJ.

Mr. Markus Michael A. Patterson appeals his conviction for the class D felony of tampering with physical evidence, for which he was sentenced as a prior and persistent offender to six years in the Department of Corrections. We affirm.

Viewing the evidence in the light most favorable to the conviction, Marshall, Missouri, Police Officer Joey Valiquette[1] stopped Mr. Patterson one night in May 2014 after observing that the passenger-side rear brake light of the vehicle Mr. Patterson was driving did not work when he applied the brakes. Mr. Patterson, who stated that the vehicle belonged to his girlfriend, could not produce a valid driver's

---

[1] Officer Valiquette was a five-year veteran on Marshall's police force and had experience patrolling the city's streets, working with the K-9 unit, and doing "drug interdiction work." The State listed his name on the criminal information as Officer Joey Valiquette, and we have used that spelling throughout, despite the transcript showing his name as Valequette.

license and tendered to Officer Valiquette an expired insurance card. The officer asked Mr. Patterson to sit in the patrol car while the officer used the radio to run the vehicle registration and establish whether any arrest warrants were pending against Mr. Patterson. Officer Valiquette had the patrol car's air conditioner cooling the vehicle's interior, but Mr. Patterson, who was dressed in a white muscle shirt and jeans, was sweating profusely, breathing rapidly, and otherwise acting nervously. He did not, however, appear to the officer to be intoxicated. Heavy police radio traffic that night slowed responses to the officer's request for service, so Officer Valiquette had the opportunity to ask Mr. Patterson, based on his sweating, when he had last used methamphetamine and whether he needed medical attention because it looked like he had been in a fight. Mr. Patterson denied using methamphetamine, but indicated that he had just come from a low-income neighborhood where he had been involved in a scuffle; he refused medical treatment. Officer Valiquette noticed that Mr. Patterson was concerned about "what was going on on the radio," and started looking over his right shoulder, as if to see whether another police officer were approaching. Mr. Patterson asked the officer whether he had any active warrants for his arrest. Officer Valiquette continued processing the tickets and completing other tasks arising from the vehicle stop.

After the police dispatcher advised Officer Valiquette that Mr. Patterson did not have any outstanding warrants, but that he lacked a valid driver's license and had a prior conviction for a narcotics-distribution violation, the officer asked if he could search the vehicle Mr. Patterson had been driving. Mr. Patterson gave his consent. In an open compartment under the stereo controls, Officer Valiquette found a glass pipe

2

with a yellowish tar residue that he knew, based on his experience, would have been used to smoke methamphetamine.  Mr. Patterson continued to deny that he smoked methamphetamine and offered to have his urine tested, while denying that the pipe was his.  Officer Valiquette arrested Mr. Patterson for possession of drug paraphernalia and read him his *Miranda* rights.  As they traveled to the police station, Mr. Patterson insisted on using the restroom and was adamant about using the restroom once they reached their destination.  He also admitted that if his urine were tested, he would test positive for marijuana and methamphetamine.  He told the officer that he had done a "line of meth," but not that he had smoked the substance.

During booking, Officer Valiquette quickly arranged to have Mr. Patterson's urine tested because of his purported need to use the restroom, obtained the necessary kit, and took Mr. Patterson to a holding cell so that he could provide the sample.  Based on his experience in other drug investigations and believing that Mr. Patterson would attempt to get rid of any contraband in his possession that had not been found during a pat-down when he was stopped, Officer Valiquette decided to conduct a "further search of his person," and had Mr. Patterson remove his shoes.  Mr. Patterson kicked his left shoe out of the officer's line of sight, and the two began wrestling to retrieve a baggie with a number of small, white pills that had been in the shoe.  Mr. Patterson was able to reach the baggie first and attempted to swallow it several times, while telling the officer to "chill out," "it was just pills."  It appeared to Officer Valiquette that the baggie had broken open at one point and that Mr. Patterson had possibly ingested some of the pills before he managed to toss the baggie into the holding-cell toilet and flush the toilet.  Office Valiquette arranged for emergency

3

medical services to check Mr. Patterson, who later told the officer that the baggie had contained 25 Vicodin pills that he had intended to sell and that he had taken some of them. Mr. Patterson's urine did not test positive for hydrocodone, one of Vicodin's two active ingredients. Mr. Patterson also told the officer that he did not know what the pills were, and the officer was unable to retrieve the pills to conduct any test on them to determine what they were. Had the officer been able to secure the bag of pills, he testified that he would have done his own preliminary check to determine what they were on the basis of their appearance and markings and that they would have been lab-tested later. Officer Valiquette also testified that the pills were not packaged in a manner that would indicate "that somebody had a prescription for Vicodin."

The State charged Mr. Patterson with the class D felony of tampering with physical evidence under section 575.100,[2] the class A misdemeanor of unlawful use of drug paraphernalia under section 195.233, and driving while revoked or suspended in violation of section 302.321. The State dismissed the latter charge. Mr. Patterson waived a jury trial, and the State proved that he was a prior and persistent felony offender with earlier convictions for a class B felony of sale of a controlled substance, a felony conviction for unlawful possession of a firearm, and a conviction for involuntary manslaughter. During the ensuing bench trial, Mr. Patterson made no request to suppress evidence based on a constitutional violation and did not object to the admissibility of any evidence. His counsel stated his belief during closing that

---

[2] Statutory references are to RSMo (2000) and cumulative supplements, unless otherwise indicated. Note that the 2014 amendments to the tampering statute do not take effect until 2017. § 575.100, RSMo Cumulative Supplement (2014).

4

the officer detained Mr. Patterson "for what I would consider[] longer than it takes to write out some traffic tickets, based on some general nervousness." The trial court found Mr. Patterson guilty of tampering with physical evidence while police were investigating a felony, "either the possession of a controlled substance or possession of a controlled substance with intent to distribute," and of possession of drug paraphernalia with intent to use.[3] According to the court, once the officer saw the pills and attempted to get a hold of them, the investigation, for purposes of the offense's felony enhancement under section 575.100.2, had begun. The court sentenced Mr. Patterson to six years in the Department of Corrections for felony tampering and ninety days to be served concurrently for possession of drug paraphernalia. Mr. Patterson filed this direct appeal from the felony judgment and sentence.

**Legal Analysis**

Mr. Patterson argues that his constitutional rights were violated by a conviction and sentence based on evidence obtained after a warrantless search of a vehicle stopped beyond the time required to investigate a vehicle-equipment violation. Because Mr. Patterson did not seek to suppress any evidence and made no objection during the bench trial to its admission, we must analyze the first point, if at all, for plain error. *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2015). Under this standard, "[a]n unpreserved claim of error can be reviewed only for plain error, which

---

[3] The State calls to this Court's attention that "[t]he circuit court's written judgment mistakenly asserts that Defendant's tampering and possession charges were disposed of by a guilty plea. The written judgment should be corrected nunc pro tunc." We agree and order that the record be so corrected.

5

requires a finding of manifest injustice or a miscarriage of justice resulting from the trial court's error." *Id.* at 154.

Mr. Patterson contends that he was detained far longer than allowed under Fourth and Fourteenth Amendment traffic-stop case law for an equipment violation and that nervousness alone is insufficient to show that the officer had a reasonable suspicion to objectively justify a warrantless search. According to Mr. Patterson, the officer's stated reason for continuing to detain him, "his nervousness, his demeanor . . . [c]ontinuing to sweat" falls short of "even a minimum level of justification to believe criminal activity was afoot." He fails to acknowledge, however, that Officer Valiquette also attributed the duration of Mr. Patterson's detention to heavy police radio traffic that kept the officer from completing the checks incident to a routine traffic stop, such as learning whether Mr. Patterson had a valid driver's license, the right to be driving the vehicle, and any outstanding warrants. *See State v. Logan*, 914 S.W.2d 806, 808 (Mo. App. W.D. 1995) (noting that, "[d]uring a routine traffic stop, an officer may 'request a driver's license and vehicle registration, run a computer check, and issue a citation.'" (citation omitted)). The information Officer Valiquette obtained during this justifiable delay concerning Mr. Patterson's lack of a valid driver's license and his prior conviction for narcotics distribution would have created an objectively reasonable suspicion that the nervousness and sweating were due not just to ambient weather conditions. *Id.* ("'Stated another way, the lawful character of a detention, and therefore a seizure, may be extended if a new factual predicate for reasonable suspicion is found during the period of lawful seizure.'" (citation omitted)).

6

Mr. Patterson also fails to indicate how his consent to the search violated the Fourth and Fourteenth Amendments. Indeed, Missouri courts have ruled that "[c]onsent searches are a valid exception to the warrant requirement of the Fourth and Fourteenth Amendments." *State v. Hindman*, 446 S.W.3d 683, 687 (Mo. App. W.D. 2014) (also noting that an officer may ask a citizen "at any time . . . whether he has contraband in his car and may ask for permission to search"). Where "consent is given without coercion, the subsequent search is not prohibited by the Fourth and Fourteenth Amendments." *Id.* Because he gave that consent and has not claimed that his consent was coerced, Mr. Patterson cannot show manifest injustice or a miscarriage of justice from the trial court's admission of evidence seized during the search or later found in his possession. This point is denied.

Regarding the second point, whether the evidence was sufficient to support Mr. Patterson's conviction for felony tampering with physical evidence under section 575.100, we review a challenge to the sufficiency of the evidence by considering whether the evidence was sufficient for a rational factfinder to find each of the essential elements of the crime beyond a reasonable doubt. *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011). "[A]ll evidence favorable to the State is accepted as true, including all favorable inferences drawn from the evidence," and "[a]ll evidence and inferences to the contrary are disregarded." *Id.*

The case law applying subsection 575.100.2 is sparse. The statute states, in relevant part,

> 1. A person commits the crime of tampering with physical evidence if he:

(1) Alters, destroys, suppresses or conceals any record, document or thing with purpose to impair its verity, legibility or availability in any official proceeding or investigation; . . .

2. Tampering with physical evidence is a class D felony if the actor impairs or obstructs the prosecution or defense of a felony; otherwise, tampering with physical evidence is a class A misdemeanor.

§ 575.100.

As we read the statute, the elements of the felony offense of tampering with physical evidence in the context of this case are (1) the destruction of a thing (pills), (2) with purpose, (3) to impair their availability in an investigation, and this tampering (4) resulted in the impairment or obstruction of a felony prosecution.[4] As to the fourth element, which increases the crime's penalty, Missouri courts have recognized and embrace the principle enunciated in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *State v. Cullen*, 39 S.W.3d 899, 905 (Mo. App. E.D. 2001) (distinguishing, in context of double jeopardy

---

[4] Regarding these elements, we disagree with the trial court which stated that felony tampering is shown under the statute where the investigation is for a felony. This is a distinction with a difference, but does not change the outcome here. An "investigation" is defined as "[t]he activity of trying to find out the truth about something, such as a crime, accident, or historical issue…," whereas a "prosecution" is defined as "[a] criminal proceeding in which an accused person is tried." *Investigation; Prosecution*, BLACK'S LAW DICTIONARY (10th ed. 2014). The statute separates the investigation and prosecution elements, while the trial court conflated them by judicial shorthand in announcing the verdict. Because our courts have determined that no official proceeding or investigation must precede the tampering activity to sustain a conviction for this offense, *State v. Hougardy*, 396 S.W.3d 443, 449 (Mo. App. W.D. 2013), the distinction becomes particularly significant where felony enhancement is charged. If, as a result of the investigation during which the accused tampered with evidence, probable cause for a felony prosecution, regardless of the tampering, is lacking, we do not believe that a conviction for felony tampering with physical evidence can be sustained. Stated another way, the tampering must obstruct both the investigation (whether for a misdemeanor or felony) **and** the prosecution or defense of a felony to constitute felony tampering.

ruling, those cases where a crime's status can be enhanced as a felony from those where prior convictions enhance a sentence and thus are not an "essential element" of the offense and do not require submission to a jury). Accordingly, the fourth element, as the other three, must be proved beyond a reasonable doubt.

Mr. Patterson does not and cannot dispute that the evidence shows beyond a reasonable doubt that he destroyed the pills intentionally. As to the third element, Missouri courts have determined that a conviction for this offense can be sustained even where no official proceeding or investigation has begun when the suspect attempts to destroy physical evidence. *See State v. Hougardy*, 396 S.W.3d 443, 449 (Mo. App. W.D. 2013) (citing *State v. Storey*, 901 S.W.2d 886, 896 (Mo. banc 1995), court rules that statute does not require an investigation to begin before one can impair it).[5] Thus, it is also clear that Mr. Patterson sought to impair the availability of the pills in an investigation by flushing them down a toilet. Indeed, Officer Valiquette testified that he intended to identify the pills once he secured them and that the pills would have been tested later; it is reasonable to infer therefore that he was conducting an investigation during the holding-cell struggle. The only serious dispute is over the fourth element: whether the evidence was sufficient to show beyond a reasonable doubt that a felony prosecution was impaired, i.e., did Mr. Patterson's attempt to get rid of the pills obstruct the prosecution of a felony, particularly given that these pills, which he asserted were Vicodin and that he apparently ingested, may not have been Vicodin? No Missouri court has yet considered what evidence is sufficient to support a conviction for felony tampering with physical evidence.

---

[5] This is the element on which the State focuses in its briefing of the second point on appeal.

9

Mr. Patterson suggests that case law addressing the sufficiency of the evidence to prove a felony offense of resisting or interfering with an arrest, and thus distinguishing that offense from the misdemeanor degree, may assist the Court in analyzing this issue. We agree. Section 575.150 makes the crime of resisting or interfering with an arrest a misdemeanor, but the penalty may be increased for a felony offense where the perpetrator "[r]esist[s], by means other than flight, or interfer[es] with an arrest for a felony." § 575.150.4. An arrest for a felony is the underlying offense to felony resisting or interfering with an arrest, just as a felony prosecution could be said to be the "underlying offense" for felony tampering with physical evidence. As discussed further below, if the State does not prove beyond a reasonable doubt that the underlying offense—an arrest—was for a felony, a felony conviction for resisting or interfering with an arrest cannot be sustained.

In *State v. Furne*, 642 S.W.2d 614, 616 (Mo. banc 1982), our supreme court determined that under section 575.150, "the degree of [the resisting or interfering] offense is linked to the degree of the underlying offense for which the arrest is made." Because the State charged Mr. Furne with resisting arrest for disturbing the peace, the court ruled that he was not charged with resisting arrest for a felony offense and, therefore, could not have been found guilty of felony resisting arrest. *Id.* This Court cited *Furne* in *State v. Burton*, 801 S.W.2d 380, 381 (Mo. App. W.D. 1990), observing that "resisting arrest is a felony only if the underlying offense is a felony and the resistance is accomplished by a means other than flight." In *Burton*, the defendant "was being arrested for interfering with the arrest of Kenneth Jones. . . . Jones was being arrested for driving while intoxicated *which can be either a felony*

10

*or a misdemeanor depending upon the circumstances*." *Id.* at 381-82 (emphasis added). Because no evidence was presented to prove that Mr. Jones's arrest was for a felony, this Court determined that Mr. Burton's felony conviction under section 575.150 could not stand. *Id.* at 382.

To illustrate the level of proof required for the State to show the underlying felony arrest, we turn to the circumstances giving rise to the court's reversal of a conviction for felony interfering with an arrest in *State v. Bell*, 30 S.W.3d 206 (Mo. App. S.D. 2000). After the bars closed in Cape Girardeau, Officer Roberts attempted to arrest Gregg Campbell for violation of a municipal noise ordinance when Campbell started cursing the officer. *Id.* Campbell refused to place his hands behind his back to assist the officer's attempt to handcuff him, and Officer Roberts then sprayed Campbell with pepper mace. During the ensuing fight between the two,

> Campbell 'stomp-kicked' Roberts in the chest, knocking him to the ground. Campbell's brother, Kenneth Campbell, ran up and together the two began stomping Roberts in the face, chest and body. The officer later testified that he believed the brothers delivered fifteen kicks each and that he feared for his life.
>
> Two other officers arrived and broke up the fight. Kenneth Campbell ran down the street, and Roberts chased him. Roberts attempted to arrest Kenneth Campbell, but he resisted. A large crowd had formed, and when two other officers arrived to assist Roberts, the crowd attempted to stop them from advancing on the scene. Some people in the crowd began throwing rocks at the officers.
>
> Roberts noticed Dmitri Bell (Defendant) throwing rocks and told him to leave. Defendant responded, 'You don't know who you're messing with.' Defendant was later charged with assault of a law enforcement officer in the second degree, rioting, and interfering with an arrest.

11

*Id.* at 206-07.  Despite the lack of any direct evidence indicating for what charge Kenneth Campbell was arrested, a jury convicted Bell of interfering with a felony arrest.  *Id.* at 207.

According to the court, "the question is whether it would be reasonable for a jury to conclude beyond a reasonable doubt that, when Defendant interfered, the officer was attempting an arrest for a felony under § 565.081."  *Id.*  Section 565.081 makes assault of a law enforcement officer in the first degree a felony where the person "attempts to kill or knowingly causes or attempts to cause serious physical injury to a law enforcement officer."  Considering all of the substantial evidence in the light most favorable to the jury's verdict, the court stated,

> Assault was not the only basis shown in the evidence for which Kenneth Campbell could have been arrested.  He might have been arrested for interfering with the arrest of his brother, Gregg.  However, even if we assume that Kenneth Campbell was being arrested for assault, this still is not an easy question.  Although 565.081, assault of a law enforcement officer in the first degree, is one basis for which Kenneth Campbell could have been arrested, in certain situations, assault of a law enforcement officer can also be a misdemeanor.  § 565.083 RSMo 1994.  There are also assaults in general which may be misdemeanors, § 565.070, RSMo 1994, as well as possible municipal ordinance violations.

*Id.* at 208.  The court also stated that "it may have been probable that Kenneth Campbell was being arrested for felony assault on a law enforcement officer, as there was evidence of a severe and prolonged attack upon the arresting officer by Kenneth Campbell and his brother, Gregg Campbell."  *Id.*  Still, the court concluded that "the evidence falls short of establishing this basis for arrest beyond a reasonable doubt.  There was a variety of charges for which Kenneth Campbell could have been arrested."  In the court's view, "[i]t would have been simple for the State to show

12

what the officer was arresting Campbell for. Failing to show this, when it could have easily been established casts doubt on the State's contentions." *Id.*

In a number of similar cases, the courts have ruled that the defendant could not be convicted of felony resisting arrest if evidence was either lacking altogether or insufficient to prove beyond a reasonable doubt that the underlying arrest was for a felony. *See, e.g., State v. Johnson*, 830 S.W.2d 36, 38 (Mo. App. W.D. 1992) (noting State's acknowledgement that the information failed to plead and that no evidence was presented to prove that the offense for which defendant was being arrested was a felony, court reverses conviction for felony resisting arrest). The officers who attempted to arrest Mr. Johnson had been told that he was in a certain hospital room and there were "'a couple of warrants' for his arrest." *Id.* at 37. He ran from them into another patient's room and held a knife up while holding onto the other patient's gown; one officer was able to take the knife from Mr. Johnson and sustained a minor cut to his hand before Mr. Johnson was apprehended. *Id.* The court agreed with Mr. Johnson and the State that no evidence had been presented at trial that the arrest was for a felony.

In *State v. Jordan*, 181 S.W.3d 588, 593 (Mo. App. E.D. 2005), the court overturned a felony conviction for resisting arrest because none of the officers involved in stopping Mr. Jordan's vehicle testified that his intent was to arrest Mr. Jordan for a felony. According to the court, the State had relied on the "collective testimony of the officers involved to show the reasonable inference from all of the evidence was that Officer Livingston contemplated arresting Defendant for a felony." *Id.* at 592. The evidence showed that the officers were attempting to stop Mr.

13

Jordan's vehicle during a chase that ended with Mr. Jordan ramming Officer O'Connor's vehicle. *Id.* Officer O'Connor testified that Mr. Jordan "struck an officer. We were planning on arresting him for the charges, evading my red lights, and siren." *Id*. at 593. The court found that "this evidence [even if it had been relevant in that Officer O'Connor did not make the arrest] would only establish resisting arrest by flight which does not constitute felony resisting arrest." *Id.* Officer Livingston had testified that his intention, when he approached Mr. Jordan after the chase, was to "bring him under control . . . and stop the vehicle." *Id.* Because Officer Livingston did not indicate that he was "contemplating arresting Defendant or that he intended to arrest Defendant for a felony," and because "there were a variety of charges for which Defendant could have been arrested," including assaulting a law enforcement officer and driving while intoxicated, the court determined that the evidence did not establish "a basis for a felony arrest beyond a reasonable doubt." *Id.* While the court acknowledged that "[t]he relevant inquiry is not whether the defendant is guilty of the charge for which he or she was arrested," it did require that the evidence show beyond a reasonable doubt that "the arresting officer contemplated making a felony arrest." *Id.* at 592 (citing *State v. Merritt*, 805 S.W.2d 337, 339 (Mo. App. E.D. 1991)). *See also State v. Bell*, 30 S.W.3d 206, 208 (Mo. App. S.D. 2000) (ruling that evidence fell short of establishing beyond a reasonable doubt basis for arrest with which defendant allegedly interfered because arrest could have been made for a "variety of charges"); *DeClue v. State*, 3 S.W.3d 395, 397-98 (Mo. App. E.D. 1999) (finding that plea-hearing court erred in accepting defendant's plea of guilty to felony resisting arrest because "it was not established

14

[during the plea colloquy or via testimony] that Movant was resisting an arrest for a *felony* assault charge" (emphasis added)).

The principle we can derive from this line of authority as applied to subsection 575.100.2 can be stated as follows: to prove that a person has tampered with physical evidence and thus obstructed the prosecution or defense of a felony, the evidence must show beyond a reasonable doubt that a person intentionally "alters, destroys, suppresses or conceals any record, document or thing" to impair its availability in an official proceeding or investigation and, as to the fourth element, that this conduct obstructed a felony prosecution. The trial court misstated the statutory elements in finding Mr. Patterson guilty of tampering with physical evidence during an investigation by stating that *"the investigation was for the purposes of investigating a felony."* This is not what the statute requires. Section 575.100.2 requires that the tampering impair the item's availability in an investigation **and** that the tampering obstruct a felony prosecution, not that the purpose of the investigation was to investigate a felony. Still, we do not find that this misstatement requires a reversal of the conviction, because the evidence was sufficient to prove that Mr. Patterson, by tampering with physical evidence, obstructed a felony prosecution.

Here, the charging document accused Mr. Patterson of destroying "approximately 25 small white pills, with the purpose to impair its [sic] availability for chemical testing . . . and thereby impaired and obstructed the prosecution of defendant for the crime of possession of a controlled substance with intent to distribute, a felony." He was, accordingly, properly charged with felony tampering. The trial court properly identified the "underlying" felony prosecution as "either the

15

possession of a controlled substance or possession of a controlled substance with intent to distribute." The evidence showed that Mr. Patterson had hidden the pills in a plastic baggie in one of his shoes, repeatedly asked to use a restroom on the way to the police station, tried to prevent Officer Valiquette from seeing or seizing the pills, and, when he could not swallow them, managed to destroy them in the holding-cell toilet. Mr. Patterson's actions were consistent with possession of a controlled substance and resulted in preventing tests from being conducted on the pills themselves. He also stated to the police that the pills were Vicodin and that he intended to sell them. Because the evidence is unclear as to whether Mr. Patterson actually ingested the pills, we can discount the test results and look to all the other evidence favorable to his conviction.[6]

We find the evidence sufficient to prove beyond a reasonable doubt that a felony prosecution was impaired. Mr. Patterson had in his possession and was charged with destroying "approximately 25 small white pills." He treated them as a controlled substance by going to extraordinary lengths to destroy them. He told the police that they were Vicodin and that he had purchased them to sell to others. His tampering with physical evidence impaired an investigation and obstructed his prosecution for possession of a controlled substance with intent to distribute. We deny this point.

---

[6] Officer Valiquette equivocated on whether he had seen Mr. Patterson ingest some pills during the fight over them in the holding cell, and Mr. Patterson's statements before, during, and after the arrest were also equivocal and/or conflicting. While he purportedly urged the officer to test his urine, implying that it would be clean, and then said that meth and marijuana would be found in his urine, and later claimed that the pills were Vicodin and that he had taken some, or he did not know what they were, he also said, according to a police officer's trial testimony, that he did not purchase them for his own use; rather, he purchased them to sell.

16

## Conclusion

We conclude that Mr. Patterson consented to the search and cannot show, as a matter of plain error that the trial court erred in admitting, without objection, evidence obtained as a result of the warrantless vehicle search.  We also conclude that the State proved beyond a reasonable doubt that Mr. Patterson tampered with physical evidence and impaired the prosecution of the felony crime of possession of a controlled substance with intent to distribute.  We affirm.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Judge

Howard, P.J., and Mitchell, J. concur.