

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | **WD82495** |
| **Respondent,** | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | |
| **FRANCIS HENRY KEMPKER,** | ) | **March 10, 2020** |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**Honorable Daniel Richard Green, Judge**

**Before Division Three:**
**Lisa White Hardwick, P.J., Thomas H. Newton, and Alok Ahuja, JJ.**

Mr. Francis H. Kempker appeals, following a Cole County bench trial, class D felony convictions for possession of methamphetamine and possession of lorazepam, for which he was sentenced to concurrent terms of seven years' imprisonment. Mr. Kempker brings two points challenging the sufficiency of evidence to show that he actually or constructively possessed methamphetamine and lorazepam. We reverse in part and affirm in part.

Mr. Kempker was charged with four counts after members of the Jefferson City SWAT team executed a search warrant at the location he was at in March 2017: (I) a class C felony of delivery of methamphetamine; (II) a class D felony possession of lorazepam; (III) a class A misdemeanor of unlawful possession of drug paraphernalia;

and (IV) a class A misdemeanor of possession of marijuana. SWAT team members located Mr. Kempker in the upstairs hallway of the apartment and detained him. SWAT also found Ms. Judith Roach, the mother of Mt. Kempker's girlfriend, in one of the two bedrooms in the upstairs of the apartment and detained her. Cpl. Kyle Petty entered the residence two or three minutes after the SWAT team entered and did not personally search Mr. Kempker. Cpl. Petty testified that Sgt. Jason Payne, a Jefferson City Police Officer, handed him a bag of suspected methamphetamine, and he believed the bag was removed from Mr. Kempker's person[1]:

> Q.    It's your understanding that he was searched?
>
> A.    Yes.
>
> Q.    The defendant?
>
> A.    Yes, he was.
>
> Q.    And it's your understanding that drugs were found on his person?
>
> A.    Yes.
>
> MR. HUNT: Judge, I'm going to object again, No.1 that's also a leading question. It also—again, I think it calls for hearsay, if he wasn't the person that actually searched his person. His understanding of what happened is not really relevant.
>
> THE COURT: Ask him if he's the one that searched Mr. Kempker.
>
> Q.    I thought I did, but did you personally search Francis Kempker?
>
> A.    No, I did not.
>
> THE COURT: Okay. Ask another question.
>                        . . .
>
> Q.    Referring to your report No. 66, I'm showing the witness a photograph. What is that a picture of?

---

[1] The State did not call Sgt. Payne to testify at the trial in this case.

A.    The bag of methamphetamine that was removed from Mr. Kempker.

Q.    And—

MR. HUNT: Judge, I'm going to object again, move to strike that response because I think that also is[ sic] just covers ground that we've already gone over, Judge.

THE COURT: Based on that particular question and that answer, I'll strike it.

The bag of suspected methamphetamine was entered only for the purpose of showing what the officer did next:

Q.    What is the white stuff in the corner?

A.    Suspected methamphetamine.

Q.    Did you do a field test of that material?

A.    I did.

Q.    And what was the result?

A.    Positive.

MR. HUNT: Judge – hang on. I would make an objection with regard to the result of that test, so I move to strike that answer. It's not scientifically reliable. If the State is only introducing that evidence for the purpose of showing what the officer did next, I suppose that's one thing.

THE COURT: It will be admitted for that purpose.

MR. HUNT: I would make an objection if they are using it for the purpose of proving that was actually methamphetamine.

THE COURT: I believe we have other lab reports coming, so we'll wait.

MR. SMITH: They will be State's Exhibit 1. All right.

THE COURT: It will be admitted.

3

During cross-examination, Appellant's counsel elicited more testimony regarding the picture of the suspected methamphetamine:

Q. And then 66 is—what is that?

A. It's the suspected bag of methamphetamine that was reported to be removed from Mr. Kempker.

Q. That you believe may have been. Right?

A. Yes.

Q. Okay. Is there any markings on that bag of any kind?

A. There's a MOPAR stamp or sticker on it but as far as other markings I can't tell.

Cpl. Petty testified that the residence is made up of an upstairs and downstairs. The downstairs was set up as living quarters, and the upstairs had a bedroom on the right, a bathroom, and a bedroom in the far back. The bed in the back bedroom had items including a small bag of unknown white powder, fingernail polish, make-up, and some women's clothing. On the left side of the bed in the back bedroom was a top drawer of a wooden shelf that held a Ziploc bag with suspected marijuana, two pills, and the Social Security card belonging to an individual identified as F.C.V. In another drawer in the back bedroom was a container with a scale weight and an insurance card for yet another individual. On the right side of the bed in the back bedroom was a shelf that contained Ms. Lacey Roach's Missouri-issued driver's license next to a purple box that held another suspected bag of methamphetamine. Mr. Kempker's wallet was also on a table in the back bedroom and contained $654 but was not near any narcotics. Cpl. Petty testified that when he searched the apartment he located three bags of suspected methamphetamine in the back bedroom. Trial counsel objected to the testimony by Cpl.

4

Petty to prove that the three bags were actually methamphetamine, and the Court sustained the objection.

State witness, Sgt. Chris Suchanek testified that he or Mr. Greg Garret, evidence technician, took possession of the physical evidence in Mr. Kempker's case. Sgt. Suchanek also testified that the suspected controlled substances were tested and returned to the Sheriff's office but that he only brought *some* of the materials to trial. The parties stipulated that the lab report showed that materials tested from Mr. Kempker's location were positive for controlled substances. The lab report indicates that three specimens were tested, and describes specimen one as, "One sealed plastic bag containing one plastic bag containing white crystals. Methamphetamine; Net weight 2.78 g; CS[2]." The lab report describes specimen two as "One sealed plastic bag containing one plastic baggie containing two white round tablets. Lorazepam; CS." At the bottom of the lab report, it states in bold caps,

**PLEASE PICK UP SPECIMENS AT YOUR EARLIEST CONVENIENCE. SPECIMENS LEFT AT MIDAMERICA LABORATORIES FOR MORE THAN ONE (1) MONTH WILL BE DESTROYED**.

Below that statement is a section that reads "SPECIMEN RETURN OR DISPOSAL RECORD; SPECIMEN(S) 1-3 RECEIVED BY:" There is no signature indicating that the specimens tested were returned to the Cole County Sheriff's Department.

The physical lorazepam tablets were not entered into evidence at trial. The other three bags of suspected methamphetamine were not entered as evidence at trial. Exhibit 17 is the bag of suspected methamphetamine with the MOPAR sticker as pictured in Exhibit 1. Exhibit 17 was admitted without objection. The trial court found Mr.

---

[2] CS is an initialism for a "Controlled Substance."

Kempker guilty of a lesser-included offense to count I, a class D felony of possession of methamphetamine, and guilty of count II, possession of lorazepam. The trial court acquitted Mr. Kempker of counts III and IV, possession of drug paraphernalia and possession of marijuana. Mr. Kempker timely appeals.

## Legal Analysis

The first point claims that the trial court erred by finding Mr. Kempker guilty of possession of a controlled substance because the evidence was not sufficient to show that the alleged controlled substance found on his person was methamphetamine or that he actually or constructively possessed methamphetamine.

"[W]e review a challenge to the sufficiency of the evidence by considering whether the evidence was sufficient for a rational factfinder to find each of the essential elements of the crime beyond a reasonable doubt." *State v. Patterson*, 489 S.W.3d 907, 912 (Mo. App. W.D. 2016). "'[A]ll evidence favorable to the State is accepted as true, including all favorable inferences drawn from the evidence,' and '[a]ll evidence and inferences to the contrary are disregarded.'" *Id*. (quoting *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011)). "[T]his Court will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *Nash*, 339 S.W.3d at 509.

A person commits the offense of possession of a controlled substance if he or she knowingly possesses a controlled substance. RSMo § 579.015.[3] To sustain a conviction for possession of a controlled substance, "the State must prove: (1)

---

[3] All statutory references are to RSMo (2016), unless otherwise indicated.

conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of this substance. *State v. Carl*, 389 S.W.3d 276, 284-85 (Mo. App. W.D. 2013). "A person has actual possession of a controlled substance if the person, 'with the knowledge of the presence and nature of the substance,' has the substance either 'on his person or within easy reach and convenient control.'" *State v. Clark*, 490 S.W.3d 704, 709 (Mo. banc 2016) (quoting RSMo. § 195.010(34)).

## I.     Count I

### A.     Lab Report

Mr. Kempker argues sufficiency of evidence as to whether the lab report showed, beyond a reasonable doubt, which bag of alleged methamphetamine was tested and found to be methamphetamine. Mr. Kempker contends that Exhibit 15 supports the theory that the items tested were destroyed because no return signature was evident and the lorazepam tablets were not presented or entered as evidence at trial. Ultimately, Mr. Kempker argues that Exhibit 17, the bag of suspected methamphetamine with the MOPAR label, was not tested and thus it is insufficient evidence to convict Mr. Kempker of possession of a controlled substance. The lab report describes specimen one as "One sealed plastic bag containing one plastic bag containing white crystals. Methamphetamine; Net weight 2.78 g; CS." Sgt. Suchanek testified that suspected controlled substances were tested and returned to the Sheriff's office.

Under our standard of review, the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances, and other testimony in the case. *Nash*, 339 S.W.3d at 509. The parties stipulated that the lab report

7

which indicated that specimen one was a bag of methamphetamine would be entered into evidence. Cpl. Petty testified that he found four bags of what appeared to be methamphetamine where Mr. Kempker was arrested, and the State presented and entered Exhibit 17, a bag of suspected methamphetamine. Exhibit 17, which was admitted without objection, consists of an evidence bag containing a plastic bag in which methamphetamine was found. Mid-America Laboratories' "Laboratory Case Number," and the specific item number assigned to the bag of methamphetamine by Mid-America Laboratories, are handwritten on the interior bag. In addition, the outer evidence bag, which is sealed at the top with red tape generically stating "EVIDENCE," has been sealed at the bottom with "EVIDENCE" tape which also contains the partial name "MERICA LABS, INC." This supports the inference that this bag was opened and resealed at the laboratory. Because we accept all evidence favorable to the State as true, including all favorable inferences drawn from the evidence and disregard all evidence and inferences to the contrary, the lab report was sufficient to show that the substance in the bag tested was methamphetamine.

B. Possession of Methamphetamine

Mr. Kempker argues that even if one of the four bags seized was methamphetamine, the State failed to prove beyond a reasonable doubt that he possessed any of them. Cpl. Petty did not personally search Mr. Kempker and his testimony that the suspected bag of methamphetamine was found on Mr. Kempker's person was stricken. During cross-examination, defense counsel elicited testimony regarding the corporal's beliefs as to the suspected methamphetamine:

8

Q.    And then 66 is—what is that?

A.    It's the suspected bag of methamphetamine that was reported to be removed from Mr. Kempker.

Q.    That you believe may have been. Right?

A.    Yes.

We also note that the outer evidence bag which was part of Exhibit 17 identifies the contents of the evidence bag as a "bag of methamphetamine"; the evidence bag states under "Location Recovered": "2323 Gray Fox Terrace, Apt. D Kempker's left front pocket." While it is not apparent from Exhibit 17 who wrote these words on the evidence bag, or the source of the information, this label was admitted in evidence as part of Exhibit 17 without objection, and the court was entitled to rely on the statement on this label in reaching its guilty verdict on count I. Based on witness testimony and the lab report, we find the evidence was sufficient for the trial court to find each of the essential elements of the crime beyond a reasonable doubt. Point one is denied.

II.    Count II

Mr. Kempker's second point challenges the sufficiency of the evidence to support his conviction for unlawful possession of lorazepam in that the State failed to introduce any substance identified as lorazepam into evidence and presented no evidence that he actually or constructively possessed lorazepam. First, we address whether the State produced evidence to identify the two white tablets as lorazepam. Cpl. Petty testified to finding the tablets in a drawer to the left of the bed in the back bedroom. The State entered photo evidence, Exhibits 12 and 13, of the two white tablets. Sgt. Suchanek stated that he received the physical evidence retrieved and sent the items to the lab for testing. The parties stipulated to the entry of the lab report as

9

evidence, and the lab report stated that the two white tablets were the controlled substance lorazepam. The trial court had sufficient evidence to find that the two white tablets in the photos were the controlled substance lorazepam.

Next, we address whether there was sufficient evidence to convict Mr. Kempker of constructively possessing the lorazepam. The State contends that the evidence was sufficient to convict Mr. Kempker of constructive possession of the lorazepam. The State argues that his wallet,[4] found in the bedroom, "raises an inference" of constructive possession in that Mr. Kempker and his girlfriend, whose belongings were also found in the bedroom, had "greater access" to the room than anyone else. *See State v. McCall*, 412 S.W.3d 370, 374 (Mo. App. E.D. 2013).[5] Mr. Kempker argues that "[i]f there was insufficient evidence to believe Appellant possessed the marijuana, there must also be insufficient evidence to believe he possessed the white pills that were commingled with the marijuana."

---

[4] The State also contends that the cell phone and men's clothing belonged to Mr. Kempker, but no testimony was introduced to prove those facts.

[5] Where the premises were jointly possessed, the court found additional factors to convict of constructive possession:

> Next, in addition to Defendant's joint control of the premises, there was sufficient further evidence to support an inference Defendant had the power and intention to exercise dominion or control over the drugs and drug paraphernalia here. Defendant's personal items found in the master bedroom, as well as personal items in the master bathroom typically used by males, raise an inference that Defendant, along with his girlfriend whose personal items were also present in these rooms, had greater access to these two rooms than the other members of the household. It was reasonable to infer that the plastic container labeled "D's Good Boy Treats" belonged to Defendant, the only household member with the initial "D." Considering the large number of items found in these two rooms that are commonly used in the production of drugs, the fact that many of them contained drug residue, the fact that one of them contained Defendant's initial, and the fact that several of Defendant's personal items were found in the same two rooms, there was sufficient further evidence to support an inference that Defendant constructively possessed the drugs and drug paraphernalia in these two rooms.

*State v. McCall*, 412 S.W.3d 370, 374 (Mo. App. E.D. 2013).

"Where the defendant shares possession of the premises with others, as was the case here, additional evidence of some incriminating circumstances must also be presented to permit the inference of knowledge and control over the substance." *State v. Bacon*, 156 S.W.3d 372, 378 (Mo. App. W.D. 2005) (citation omitted). In *State v. Bacon*, this Court stated that:

> Some of the types of additional evidence that may suffice to support a conviction where there is joint control of the premises are "routine access to an area where such substances are kept, the presence of large quantifies [sic] of the substance at the scene where appellant is arrested, admissions of the accused, ... being in close proximity to drugs or drug paraphernalia in plain view of the police, [and the] mixture of defendant's personal belongings with the drugs."

*Id*. (quoting State v. Monis, 41 S.W.3d 494, 497 (Mo. App. E.D. 2000)).

In. *Carl*, 389 S.W.3d at 285–86, the evidence showed that methamphetamine was in two places within the defendant's residence, where he had routine access and where his personal belongings were located; we found this evidence sufficient for a reasonable juror to have determined that he had constructive possession and/or that he shared constructive possession of the methamphetamine. The defendant's birth certificate was on a headboard in the bedroom where the drugs were found. *Id*. at 285. Men's and women's clothing were in the bedroom, separated from each other in a drawer and mixed together in a laundry basket. *Id*. We further determined that the fact that defendant was attempting to manufacture methamphetamine would additionally support a reasonable juror's conclusion that he also possessed the methamphetamine that was found within his residence. *Id*. at 286.

11

In *State v. Jackson*, 304 S.W.3d 791, 795 (Mo. App. W.D. 2010), we stated, "A defendant's access to the areas where drugs are found and the presence of a large quantity of drugs both support an inference of possession and control, when consistent with the totality of the circumstances. In *Jackson*, the defendant's girlfriend testified that she and defendant "used marijuana together, virtually on a daily basis". *Id*. She also testified that any drugs they used the day of defendant's arrest "were from the stash she had in her bedroom." *Id*. The officer testified that defendant's girlfriend told her that defendant was "the person who brought the drugs into the home and that he sold the drugs out of the house." *Id*. "The execution of the search warrant revealed a large amount of drugs in the home, where [defendant] had free access, and nearly $1,000 on [his] person." *Id*.

Here, the trial transcript reveals that Mr. Kempker had regular access to the premises as he had visitors all hours of the day. The officer found only two lorazepam pills; there was no unusual conduct by Mr. Kempker such as attempting to flee; there was no evidence that Mr. Kempker or his property was found in close proximity to the lorazepam. The pills were found in a drawer, and thus were concealed from view. Even within the drawer, the pills were not visible when the drawer was opened. Although some of Kempker's personal belongings were found in the bedroom, none of his belongings were found in close proximity to the pills; instead, another person's Social Security card was found in the same drawer as the pills, and a health insurance card of yet another person was found in the drawer below where the pills were found. Under the totality of the circumstances, we consider that the lorazepam pills were not in plain view, were located in a drawer with F.C.V.'s Social Security card, and were not

12

commingled with Mr. Kempker's personal belongings. Further, the trial court did not find that Mr. Kempker was attempting to manufacture lorazepam or methamphetamine. Unlike *Carl* and *Jackson*, no additional facts buttress an inference that Mr. Kempker had knowledge of the lorazepam's presence. Point II is granted.

## Conclusion

We, therefore, conclude that the trial court did not err by finding Mr. Kempker guilty of count I, possession of the controlled substance methamphetamine, because the evidence was sufficient to show that the alleged substance found on his person was methamphetamine and that he actually possessed methamphetamine. We find the evidence insufficient, however, to convict Mr. Kempker of constructively possessing the lorazepam because no additional factors buttress an inference that Mr. Kempker had knowledge of the lorazepam's presence. We affirm in part and reverse in part.


/s/ *Thomas H. Newton*
Thomas H. Newton, Judge


Lisa White Hardwick, P.J., and Alok Ahuja, J. concur.

13